UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

UNITED STATES OF AMERICA,

    -v-

SAMUEL GOLDBERGER, et al.,

       *Defendants*,

SAMUEL GOLDBERGER,

       *Defendant-Movant*.

---------------------------------------------------------------X

No. 12 Cr. 598 (PAC)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SAMUEL GOLDBERGER'S <u>APPLICATION FOR MODIFICATION OF BAIL</u>

HAFETZ NECHELES & ROCCO

Susan R. Necheles
Noah E. Shelanski
Attorneys for Defendant
*Samuel Goldberger*

## **TABLE OF CONTENTS**

                                                Page

INTRODUCTION ............................................................................................................ 1

FACTUAL STATEMENT. ............................................................................................. 1

    A. The Indictments. ................................................................................................. 1

    B. Mr. Goldberger's Bail Status. ............................................................................. 3

    C. Pretrial Services' Recommendation ................................................................... 3

    D. Mr. Goldberger's Community Ties. .................................................................... 4

    E. Mr. Goldberg's Lack of Ties To Anyplace Other Than New York. .................... 6

HOME DETENTION WITH ELECTRONIC MONITORING IS NOT THE
"LEAST RESTRICTIVE" CONDITION OF RELEASE NECESSARY TO
REASONABLY ASSURE THE FUTURE COURT APPEARANCES OF
SAMUEL GOLDBERGER AND PROTECT THE ECONOMIC SAFETY OF
THE COMMUNITY. ....................................................................................................... 7

    A. The Bail Reform Act and The Eighth Amendment Require That The
       Least Restrictive Conditions of Bail Be Imposed. ............................................... 7

    B. Home Detention and Electronic Monitoring Are Extremely Restrictive
       And Intrusive Conditions Of Bail. ....................................................................... 8

    C. Home Detention And Electronic Monitoring Are Not Necessary To
       Ensure Mr. Goldberger's Compliance with the Conditions of Bail. ................. 10

              1. *Nature and Circumstances of the Crimes Charged.* ............................. 11

              2. *Weight of the Evidence* ......................................................................... 12

              3. *History and Characteristics of Mr. Goldberger.* .................................. 13

              4. *Nature and Seriousness of Danger to the Community* ......................... 13

    D. The Conditions Proposed In This Memorandum Are Sufficient To
       Ensure Mr. Goldberger's Appearance As Required And The Safety of
       Any Other Person In The Community .............................................................. 14

CONCLUSION .............................................................................................................. 16

## INTRODUCTION

Defendant Samuel Goldberger respectfully submits this memorandum in support of his motion for modification of his bail conditions, specifically to eliminate the conditions of home detention and electronic monitoring. Because Mr. Goldberger has two cases pending and because his bail conditions apply to each of these cases, we have submitted this identical motion in each of the two cases.

To address any concerns that Mr. Goldberger might flee we propose that his conditions of bail be modified to (1) increase the amount of his bail bond from $750,000 to $1.5 million, (2) increase the amount of property securing this bond to property and cash totaling $1 million, including one property not owned by Mr. Goldberger or his wife, and (3) add one additional financially responsible person who will sign the bond and post property to secure the bond.

The Pretrial Recommendation prepared for the Court by Pretrial Services did not recommend home detention or electronic monitoring and the Pretrial Services Officer assigned to monitor Mr. Goldberger has informed counsel that he has no objection to this motion to eliminate the conditions of home detention and electronic monitoring. *See* September 20, 2012 Declaration of Noah E. Shelanski in Support of Defendant Samuel Goldberger's Application for Modification of Bail, ¶ 3 & 4.[1]

## FACTUAL STATEMENT

### A.   The Indictments

Mr. Goldberger is charged in two separate indictments.

Mr. Goldberger first was arraigned on the indictment which names him as the lead defendant; *U.S. v. Goldberger et al.*, 12-CR-598 (PAC). This case, currently pending before

---

[1] Hereinafter "Shelanski Declaration."

1

Judge Crotty, charges Mr. Goldberger and two other defendants, Judah Yablonsky and Samuel Ashkenazi with three counts of Conspiracy. The indictments center around conduct he allegedly engaged in while operating a <u>licensed</u> check cashing company called The Money Spot, Inc. Count One charges Mr. Goldberger with Conspiring to defraud the United States and Evade Currency Reporting Requirements in that he allegedly improperly omitted information from CTRs and improperly allowed others to structure transactions. Count Two alleges that Mr. Goldberger conspired to Conduct an Unlicensed Money Transmitting Business in that he allegedly cashed checks for check brokers who were unlicensed. Count Three alleges that Mr. Goldberger conspired to conduct money laundering in that he cashed checks issued to a health care clinic involved in no-fault insurance fraud. The *U.S. v. Goldberger* indictment is attached as Exhibit 1.

The second indictment, *U.S. v. Ashkenazi et al.*, 12-CR-581 (PKC), is currently pending before Judge Castel. In this case Mr. Goldberger and two other defendants, Samuel Ashkenazi and Samuel Blau are charged with conspiracy to commit money laundering in that they allegedly conspired to launder money knowing that it was the proceeds of narcotics trafficking. There is no allegation in the indictment that Mr. Goldberger ever sold or possessed narcotics or conspired to do so. The *U.S. v. Ashkenazi* indictment is attached as Exhibit 2.

Thus, the charges against Mr. Goldberger all allege violations of *financial* crimes. There are no allegations of violence in the Indictment and none of the charges creates any presumptions under the Bail Reform Act. *See* 18 U.S.C. § 3142(f)(1).

### B. Mr. Goldberg's Bail Status

Bail was set by Magistrate Peck at Mr. Goldberger's initial appearance on August 15, 2012. A copy of the transcript of Mr. Goldberger's bail hearing is attached as Exhibit 3. Pretrial Services interviewed Mr. Goldberg, verified his community ties, employment history, and family, and recommended that he be released on bail without home detention or electronic monitoring. (Shelanski Declaration, ¶ 3). The government, however, told Mr. Goldberg's then attorney that they would oppose him being released on bail unless he consented to home detention and electronic monitoring. Mr. Goldberg's then attorney consented to the following bail package, which was imposed by Magistrate Peck:

(1) $750,000 Personal Recognizance Bond ("PRB") co-signed by four financially responsible persons secured by $30,000 (cash) and the defendant's home;

(2) travel restricted to the Southern and Eastern Districts of New York, and the District of New Jersey;

(3) surrender of all travel documents (and no new applications);

(4) strict pretrial supervision; and

(5) home detention with electronic monitoring (religious services on advance notice to Pretrial; medical and attorney visits on advance notice to Pretrial).

### C. Pretrial Services' Recommendation

As explained above, the conditions of bail that were imposed by the Magistrate Judge were *not* conditions that were recommended by Pretrial services. To the contrary, Pretrial services recommended that Mr. Goldberger be released on a secured bond that is co-signed by two financially responsible persons with conditions of regular Pretrial Services supervision,

surrender of all travel documents and no new applications and travel restricted to the Southern and Eastern Districts of New York. (Shelanski Declaration, ¶ 3).

Mr. Goldberger is, thus, now proposing conditions of bail that would be significantly more stringent than those proposed by Pretrial Services – specifically: five financially responsible people would sign the bail bond as opposed to two, the bail bond would be doubled from the current amount of $750,000 to $1.5 million, the amount of property securing the bail would be increased from $30,000 to $1,000,000, and one of the properties securing the bond will be owned by someone other than Mr. Goldberger's or his wife.

### D. Mr. Goldberger's Community Ties

Underlying Pretrial Services' recommendation that Mr. Goldberger be released on bail without home detention or electronic monitoring are the facts which establish Mr. Goldberger's extensive community ties.

Mr. Goldberger is 35 years old and has no prior criminal offense. He was born and raised within the close knit Pupa sect of the Hasidic Jewish community in Brooklyn as one of his parents' six children. The sect is named after the town in Hungary in which it originated, Puppa, where a very prominent Yeshiva was located. During World War II the entire Jewish population of Puppa was deported to Auschwitz. The Pupa Rabbi survived Auschwitz and after the war immigrated to the United States and settled in Williamsburg.

This history explains why Mr. Goldberger's entire family largely lives within 15 blocks of each other in the Williamsburg neighborhood in Brooklyn. He has no relatives in Hungary (indeed, we do not believe that there are any Jews who live in Puppa anymore) and no relatives who live in Israel. Almost all of his known relatives – and there are many – live in Brooklyn.

The relatively small number of Mr. Goldberger's relatives who do not live in Brooklyn, live in a related Pupa communities near New York City.

Indeed, Mr. Goldberger was born and grew up in Williamsburg. He attended all of his schooling at a Pupa affiliated Yeshiva in Williamsburg Brooklyn except for two years spent at a Yeshiva in Ossining, New York (which was connected with his Yeshiva in Brooklyn). This is the same Brooklyn Yeshiva system that his wife attended before they were married and which their children now attend. Almost immediately after finishing Yeshiva at 18 years old, Mr. Goldberger married his wife Judy in 1997. They had their first child together in 1997, and today they are blessed with five children, the youngest child arriving in 2007.

After finishing school and marrying Judy, Mr. Goldberger went to work for his grandfather's check cashing business where he worked until his grandfather died in 2007. Mr. Goldberger subsequently went to work for another check cashing business.

Mr. and Mrs. Goldberger continue to live in Brooklyn to this day at the address where his family has lived for the past 8 years. He owns property in Brooklyn. Indeed, Brooklyn is at the heart of their family and deeply religious community. Prior to his arrest and subsequent home detention, Mr. Goldberger typically attended his neighborhood synagogue three times a day, a schedule that Pretrial services has not permitted Mr. Goldberger to maintain under his current bail restrictions.

As stated above, even beyond Mr. Goldberger's wife and children, his entire family – four generations – lives not only in the United States, but within the New York and New Jersey area. We attach to this memorandum as Exhibit 4 a chart setting forth all of Mr. and Mrs. Goldberger's known relatives and where they live. There are a total of 105 relatives on Mr. Goldberger's side of the family (including his wife and children) and 67 relatives on Judy

Goldberger's side of the family. *Virtually all of these people live either in Brooklyn or in Monroe, New York.* This includes Mr. Goldberger's 92 year old grandfather Zigmond Goldberger who is in a rehabilitation center for the elderly and whom Mr. Goldberger used to visit on a weekly basis before his arrest.

In sum, Mr. Goldberger' entire world is here in the New York area. He has no ties to any other country other than normal travel. His world is centered on the four generations of close-knit family who live with him and nearby and his religious community. Flight by Mr. Goldberger would destroy this world for him, his wife, their children, their parents and the many others whose emotional ties to him are the essence of his life.

Indeed, the vast majority of the approximately 10,000 Pupa Hassidic Jews live in New York, either in Williamsburg or in upstate New York. There are small sects who also live in Canada, London and Jerusalem, but there are no other communities of Pupa Hassidim in the world. The United States has extradition treaties with Canada, England, and Israel. Mr. Goldberger is well aware that if he were to flee to any of these communities he could easily be extradited back to the United States.

In other words, in order for Mr. Goldberger to flee he would have to leave his entire extended family behind, leave or uproot his children, and give up the religious community that has been the center of his entire life.

### E. Mr. Goldberg's Lack of Ties To Anyplace Other Than New York

Notably, the government has not made any allegation that Mr. Goldberger has ties to anyplace other than New York. While Mr. Goldberger has traveled with his family, his trips have been the type of trips any tourist would take. For example, he has visited Israel

6

approximately six or seven times in his life for approximately a week each time. This is not atypical for an American Jew. To the best of his knowledge, he does not have any family in Israel. He does not own any property in Israel or have any bank accounts there.

In addition, Mr. Goldberger made two "Heritage trips" in the past ten years to Eastern Europe with other members of his family and community. Again, he does not have any family that he knows of in Europe and he does not own any property in Europe or have any bank accounts there.

Mr. Goldberger also went to the Caribbean on several occasions with his wife.

Thus, all of Mr. Goldberger's travel was typical, tourist travel. There is no allegation of which the defense is aware that Mr. Goldberger ever used an alias to travel, that he has any false travel documents or false identification documents, or that he owns any property anywhere other than in the United States.

### HOME DETENTION WITH ELECTRONIC MONITORING IS NOT THE "LEAST RESTRICTIVE" CONDITION OF RELEASE NECESSARY TO REASONABLY ASSURE THE FUTURE COURT APPEARANCES OF SAMUEL GOLDBERGER AND PROTECT THE ECONOMIC SAFETY OF THE COMMUNITY

**A. The Bail Reform Act and The Eighth Amendment Require That The Least Restrictive Conditions of Bail Be Imposed**

The Bail Reform Act of 1984 prescribes in significant detail the bail process and standards, including the form of hearing and process due an accused, the creation of presumptions for certain cases (none of which are applicable here), the specific standards by which detention and conditions of release are determined, the allocation of burdens of proof, and the reaffirmation of a defendant's presumption of innocence throughout the bail process. 18

U.S.C. 3142 *et seq.; see also United States v. Salerno*, 481 U.S. 739, 747 (1987) (affirming constitutionality of Bail Reform Act).

More specifically, the Bail Reform Act requires courts to release defendants before trial subject to "the least restrictive" condition or set of conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). The statute then lists thirteen categories of conditions that may be imposed, plus a catch-all category of "any other condition that is reasonably necessary" to satisfy the aforementioned joint objectives of bail. *Id.* at § 3142(c)(1)(B)(xiv). None of the enumerated conditions in the statute contain a provision for home detention with electronic monitoring. This condition is a relatively new addition to federal bail. It is imposed under the "catch-all" provision in the Act.

The Bail Reform Act's requirement that a defendant be released before trial subject to the least restrictive conditions necessary is rooted in the Eighth Amendment to the United States Constitution which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," U.S. Const. Amend. VIII. "Bail conditions are unconstitutionally excessive if they impose restraints that are more than necessary to achieve the government's interest . . ." *United States v. Polouizzi*, 697 F.Supp. 2d 381, 390 (E.D.N.Y. 2010).

### B. Home Detention and Electronic Monitoring Are Extremely Restrictive And Intrusive Conditions Of Bail

Home detention and the associated electronic monitoring are a significant infringement on an individual's liberty and an extraordinary condition of release. As such, home detention is qualitatively different from the historical "standard" conditions of release, such as posting a

bond, not committing crimes while on bail, reporting changes in address or telephone number, or appearing at all future court appearances.

It is not hard to see how home detention has curtailed Mr. Goldberg's liberty. Under his conditions of bail, Mr. Goldberg can only leave his home to go to work, to synagogue, as approved by pre-trial services or the Court, to his attorney's office, or to Court. He is not free to go out with his children or his wife or to help her in the many things that are involved in running a family with five children, such as shopping, bringing the kids to and from school, doctor's appointments, bringing the children to tutoring or religious services, etc. He cannot go to community events. He cannot go and visit family members or attend social functions. And indeed, he cannot even attend synagogue as frequently as he traditionally attended synagogue because pre-trial services has limited his regularly approved synagogue visits to Sabbath Services on Friday evenings and Saturdays.[2]

Numerous family and community members have written letters to tell the Court how these conditions have interfered with Mr. Goldberger's family, religious and community life. Thus, Esther Stein, Mr. Goldberger's younger sister, tells how the conditions of bail have prevented Mr. Goldberger from attending events at his son's school, or going with his fifteen year old son to synagogue "for the extra learning class that his fifteen year old son is used to taking with him." (Exhibit 5). Mrs. Stein writes that "Samuel has never missed an event in his son's lives before." *Id.* The School Administrator from his daughters' school, Moshe Brull, also notes how Mr. Goldberger's home detention has meant that "he can no longer go to school functions or his children's activities. This is a very bitter pill form him and his children to

---

[2] As set forth above, normally Mr. Goldberger would attend synagogue three times a day to pray, and other times to study with his children. Furthermore, during the holidays he would attend much more frequently. Additionally, we are approaching the holiday of Sukkot where Mr. Goldberger's religious principals also will require that he eat all his meals outside, in a hut (a "Sukkah"), and that he spend much of his day and night in this Sukkah as well. (Many religious individuals sleep in the Sukkah.)

9

swallow." (Exhibit 6). And Mr. Goldberger's mother explains how the condition of home detention has penalized both Mr. Goldberger's four sons, whose father is no longer involved in their education, and his wife and daughter, who for religious reasons do not drive and therefore depend on Mr. Goldberger to get around in the community. Mrs. Ryvkie Goldberger writes, "In our orthodox, same gender school system where Fathers are the ones interacting with teachers and Rabbis his four sons are surely being unfairly penalized. (Exhibit 7). Since Benci[3] is the only driver in the family his wife and daughter are having their lives curtailed unfairly, as well." *Id.*

Other writers tell of how Mr. Goldberger's home confinement conditions have interfered with his traditional community service. These letters tell the court about how Mr. Goldberger has come to their aid, and how he is a person relied upon by many in the community. (Exhibits 8, 9, 10, 11, and 12). Since he has been under home detention, however, Mr. Goldberger has been unable to fulfill his previous commitment to helping others in his community.

Thus, the letters attached as exhibits to this motion illustrate how Mr. Goldberg's conditions of bail have impaired his liberty to spend time with his family and friends, to participate in community activities, and to practice his religion in the way he believes he should practice it, and in the manner he has traditionally practiced it. There can be no question that home detention and electronic monitoring are significant restraints on Mr. Goldberger's liberty.

### C. Home Detention And Electronic Monitoring Are Not Necessary To Ensure Mr. Goldberger's Compliance with the Conditions of Bail

As noted above, the Bail Reform Act requires the release of a defendant on the "*least restrictive*" conditions necessary to "reasonably assure the appearance of the person as required

---

[3] Mr. Goldberger's nickname is "Benci" or "Benzi."

and the safety of any other person and the community." *See* 18 U.S.C. § 3142(c)(1)(B) (emphasis added). To determine the least restrictive conditions of release necessary to achieve the aims of the Bail Reform Act, the Court must consider the following factors, (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *see also U.S. v. Sabhnani*, 493 F.3d 63, 76 (2d Cir. 2007); *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993). An analysis of these factors compels the conclusion that the significant bond and other conditions of Mr. Goldberger' pre-trial release which we propose above are more than sufficient to accomplish the aims of the Bail Reform Act *without* the need for home detention with electronic monitoring.

1. *Nature and Circumstances of the Crimes Charged*

In evaluating the "least restrictive" bail conditions that will "reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court must take into account: "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." *See* 18 U.S.C. § 3142(g)(1). It is clear from the statutory language that the primary consideration for the Court is whether the charged crime involved violence, narcotics, sex crimes, terrorism, or weapons.

Critical here to the Court's analysis of the "nature and circumstances of the crime charged," is that Mr. Goldberger has not been charged with any crime involving violence, sex trafficking, terrorism, minor children, narcotics, or weapons. Accordingly, there is nothing about

the nature of circumstances of the offenses that Mr. Goldberger has been charged with that suggest that the severely restrictive conditions of home detention with electronic monitoring are necessary to achieve the purposes of the Bail Reform Act.

Furthermore, while Mr. Goldberger has been charged in two separate indictments, both indictments basically charge the same alleged criminal scheme – money laundering in connection with a licensed check cashing business. The fundamental differences between the two indictments is that one – before Judge Castel – alleges that Mr. Goldberger knew that the money that was being given to him at his check cashing business involved the proceeds of narcotic transactions that were engaged in by people other than Mr. Goldberger, while the other indictment – before Judge Crotty – alleges that Mr. Goldberger knew that checks that were being given to him at his check cashing involved the proceeds of health insurance fraud engaged in by people other than Mr. Goldberger, and also that Mr. Goldberger helped other people structure financial transactions and misstate information on CTRs.

Thus, while there are two separate indictments, this is not a situation where Mr. Goldberger is alleged to have been involved in two entirely separate criminal schemes. As the government stated in court, the evidence underlying both cases is primarily the same set of tapes and documents.

2. *Weight of the Evidence*

The government undoubtedly will argue that its case against Mr. Goldberger is strong. However, to date the government has not made any specific allegations about the evidence against Mr. Goldberger and has not produced any tape transcript or tape which supports the allegations against Mr. Goldberger in the indictment. In any event, the strength of the

12

government case is generally considered the "least important" of the 18 U.S.C. § 3142(g) factors for the court to consider when determining the conditions necessary to satisfy the aim of the Bail Reform Act. *See U.S. v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008).

### 3. History and Characteristics of Mr. Goldberger

The facts here concerning Mr. Goldberger's history and characteristics are set forth above and overwhelmingly establish that Mr. Goldberger' entire world is here in the New York area. There is no evidence to support that he is a risk of flight.

### 4. Nature and Seriousness of Danger to the Community

Finally, the government cannot show any "economic danger" to the community from Mr. Goldberger.

The Second Circuit has not endorsed the position that "economic harm" should be considered in evaluating danger to the community under the Bail Reform Act. While courts clearly have considered the concern about nonphysical harm to the community where the charges fall under the enumerated felonies articulated in 18 U.S.C. § 3142(f)(1), such as child pornography or drug trafficking offenses, *see e.g. United States v. Zaragoza*, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008), *United States v. Schenberger*, 498 F.Supp.2d 738, 742 (D.N.J. 2007), there is scant authority supporting the theory that a court should consider a defendant's propensity to commit further economic crimes as the danger to the community contemplated by the Bail Reform Act. This case certainly does not give the Court reason to take such an expansive view of this clause in the Act. *See e.g., United States v. Madoff*, 586 F.Supp.2d 240, 254 (S.D.N.Y. 2009) ("[I]t is far too great an extension to reach from the cases presented by the

13

Government that narrowly recognize the possibility of economic harm (and rarely conclude the economic harm presented rises to the level of a danger to the community for which someone should be detained) to such a conclusion based on the minimal evidence presented here by the Government.").

The specific allegations in this indictment do not support a threat to the community of continued economic harm. The alleged transactions involving falsified currency transaction reports, structuring, and money laundering are extremely unlikely to recur because the Mr. Goldberger no longer works at a licensed check casher following his arrest in this case and, the extensive searches and seizures conducted by the government have eliminated defendant's ability to engage in the alleged offense activity. Indeed, the government conceded as much when it informed magistrate Judge Peck at Mr. Goldberger's bail hearing that "the co-defendants do not work [at the check cashing institution] . . . our understanding is in all likelihood this institution will be shut down." *See* Exhibit 3, p. 7 (Transcript of August 15, 2012 Arraignment).

For these reasons, the issue of "danger to the community" should not be a concern to the Court in determining the "least restrictive" conditions of bail for Mr. Goldberger.

### D. The Conditions Proposed In This Memorandum Are Sufficient To Ensure Mr. Goldberger's Appearance As Required And The Safety of Any Other Person In The Community

The personal and family background of Mr. Goldberg, his lack of criminal history, and his substantial ties to the New York community combine to prove that he is not a flight risk, and the government has failed to show any economic danger to the community under the circumstances presented here.

Mr. Goldberger's pre-trial release is already conditioned on a significant bail package

14

including a $750,000 personal recognizance bond secured by 4 co-signors and secured by $30,000 in cash and Mr. Goldberger's real property. Mr. Goldberger's co-signors are his wife Judy, Israel Weber, a friend of Mr. Goldberger's since the age of 3; and Moses Knopfler and Moses Schlesinger, old friends of Mr. Goldberger's parents who are now very close with Mr. Goldberger's family. This significant bond carries with it great moral suasion to assure that Mr. Goldberger complies with his bond conditions as Mr. Goldberger recognizes that his co-signors risk losing their own homes and other assets if he fails to comply with his conditions of release. *See United States v. Vaccaro*, 51 F.3d 189 (9th Cir. 1995); *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Terrell*, 983 F.2d 653 (5th Cir. 1993); *United States v. Santiago*, 826 F.2d 499 (7th Cir. 1987); *United States v. Gigante*, 166 F.R.D. 3 (E.D.N.Y. 1996); *United States v. Gambino*, 809 F. Supp. 1048 (S.D.N.Y. 1992).

We propose that Mr. Goldberger's bail bond be doubled, to $1.5 million, and that an additional financially responsible person be added as an additional suretor, and that the amount of property and money securing the bond be increased to $1,000,000, and that at least one of the properties securing the bond be property owned by someone other than Mr. Goldberger and his wife. We submit that all of conditions together, including the significant bond and the hardship that would fall on other people if he were to default on the bond, are conditions that are more than sufficient to accomplish the aims of the Bail Reform Act *without* the need for the conditions of home detention with electronic monitoring.

## **CONCLUSION**

For the forgoing reasons, Mr. Goldberger respectfully submits that his bail conditions should be modified to (1) remove the conditions of home confinement with electronic monitoring, (2) increase the amount of the personal recognizance bond to $1,500,000 secured by $1,000,000 in cash and property, including one property not owned by Mr. Goldberger or his wife, and (3) require five financially responsible persons as co-signors on the personal recognizance bond.

HAFETZ NECHELES & ROCCO

_____
Susan R. Necheles (SN1215)
Noah E. Shelanski (NS4800)
500 5th Avenue, 29th Floor
New York, NY 10110
(t)(212) 997-7595
(f) (212) 997-7646
Attorneys for Defendant
*Samuel Goldberger*